IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

**HUNTINGTON DIVISION**

C. MICHAEL KENNEDY and
LYNN E. KENNEDY,

                    Plaintiffs,

v.                                                        CIVIL ACTION NO.   3:13-11401

BAC HOME LOANS SERVICING, LP,
f/k/a COUNTRYWIDE HOME LOANS
SERVICING, LP,

                    Defendant.

**MEMORANDUM OPINION AND ORDER**

            Pending before the Court is a Motion to Dismiss by Defendant Bank of America,

N.A., as successor by merger to BAC Home Loans Servicing, L.P. f/k/a Countrywide Home Loans

Servicing, LP (hereinafter referred to as BAC). ECF No. 6.   For the following reasons, the Court

**GRANTS**, **in part,** and **DENIES, in part**, Defendant's motion.

**I.**
**FACTUAL AND**
**PROCEDURAL HISTORY**

            On January 29, 2013, Plaintiffs C. Michael Kennedy and Lynn E. Kennedy filed a

Complaint against Defendant in the Circuit Court of Putnam County.   In their Complaint,

Plaintiffs allege they took out a mortgage to purchase a house in 1994.   After a series of

transactions, their mortgage was assumed by Defendant.   Unfortunately, on December 14, 2010,

Plaintiffs' house was destroyed by fire.   The house was insured by Erie Insurance Property &

Casualty Company (hereinafter Erie).   According to Plaintiffs, Defendant informed them on

January 26, 2011, that the payoff amount of the lien was $101,150.47.   Plaintiffs state that on January 31, 2011, Erie sent Defendant a check for the exact amount of the payoff.

Although Erie mailed Defendant a payoff check, Plaintiffs assert that from January through May of 2011, Defendant sent them almost daily correspondence accusing them of being delinquent, demanding payment, and threatening a collection action against them.   In addition, Plaintiffs claim that Defendant called them at least 41 times falsely stating they owed money. Plaintiffs allege that Defendant ultimately took affirmative actions to foreclose on their property, and Defendant falsely notified several credit reporting agencies that Plaintiffs' account was delinquent.   As a result, Plaintiffs claim their credit score was adversely impacted, and they only could purchase a house that was worth half the price of the one that burned.

After receiving calls and delinquency notices, Plaintiffs sent a letter to Defendant's payoff department in early March 2011 asking that the check be applied to pay off their loan. Defendant never responded, but the check apparently was cashed on or about March 7, 2011. Nevertheless, Plaintiffs allege they continued to receive letters and phone calls so they filed a consumer complaint with the Antitrust Division of the West Virginia Attorney General's Office on April 15, 2011.   According to Plaintiffs, the Attorney General's Office offered to voluntarily mediate the dispute, but Defendant declined.   Instead, Plaintiffs received a letter dated May 11, 2011, from Keith J. Tuttle with Defendant stating Plaintiffs owed an additional $538.42 for interest that had accrued.   Plaintiffs state they felt they had no choice but to pay Defendant so they sent a check for the precise amount that same day.

More than two weeks later, on May 26, 2011, Joshua Moore, a Customer Advocate with Defendant's Office of the CEO and President, acknowledged the Consumer Complaint Plaintiffs filed and stated he would respond in 60 days. On June 1, 2011, Mr. Moore sent another letter to Plaintiffs stating that on March 3, 2011, Defendant received Erie's check dated January 31, 2011, and the check was applied to their account. Mr. Moore further said Plaintiffs should receive a release of the lien within 30 days and Defendant would stop making collection calls and sending collection letters. He also said he requested their credit from January 2011 to April 2011 be corrected. Mr. Moore further sent Plaintiffs a gift card from Home Depot for $100 with regrets for any inconvenience they experienced. Defendant refused, however, to refund the $538.42 Plaintiffs sent.

Thereafter, Plaintiffs filed this action in State court alleging causes of action for violations of the West Virginia Consumer Credit Protection Act (WVCCPA), breach of contract, libel and defamation, invasion of privacy, tort of outrage, agency, respondeat superior, fraudulent misrepresentation, and negligence. Defendant removed the case to this Court based upon diversity of jurisdiction and then moved to dismiss. Upon considering the arguments of the parties, the Court rules as follows.

## II.
## STANDARD OF REVIEW

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the United States Supreme Court disavowed the "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41 (1957), which was long used to evaluate complaints subject to 12(b)(6) motions. 550 U.S. at 563. In its place, courts must now look for "plausibility" in the complaint. This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (internal quotation marks and citations omitted). Accepting the factual allegations in the complaint as true (even when doubtful), the allegations "must be enough to raise a right to relief above the speculative level . . . ." *Id*. (citations omitted). If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id*. at 558 (internal quotation marks and citations omitted).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court explained the requirements of Rule 8 and the "plausibility standard" in more detail. In *Iqbal*, the Supreme Court reiterated that Rule 8 does not demand "detailed factual allegations[.]" 556 U.S. at 678 (internal quotation marks and citations omitted). However, a mere "unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient. *Id*. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists when a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The Supreme Court continued by explaining that, although factual allegations in a complaint must be accepted as true for purposes of a motion to dismiss, this tenet does not apply to legal conclusions. *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted). Whether a plausible claim is stated in a complaint requires a court to conduct a context-specific analysis, drawing upon the court's own judicial experience and common sense. *Id*. at 679. If the court finds from its analysis that "the

well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id.* (quoting, in part, Fed. R. Civ. P. 8(a)(2)).   The Supreme Court further articulated that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.   While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*

### III.
### DISCUSSION

### A.
### WVCCPA

Defendants first argument is that Plaintiffs' claims under the WVCCPA are barred by a one-year statute of limitations found in West Virginia Code § 46A-5-101(1).   This section provides, in part:

> With respect to violations arising from consumer credit sales or consumer loans made pursuant to revolving charge accounts or revolving loan accounts, or from sales as defined in article six of this chapter, no action pursuant to this subsection may be brought more than four years after the violations occurred. With respect to violations arising from other consumer credit sales or consumer loans, no action pursuant to this subsection may be brought more than one year after the due date of the last scheduled payment of the agreement.

W. Va. Code § 46A-5-101(1), in part.   "Ordinarily, a defense based on the statute of limitations must be raised by the defendant through an affirmative defense, *see* Fed. R. Civ. P. 8(c), and the burden of establishing the affirmative defense rests on the defendant." *Burgess v. Infinity Fin. Emp't Servs., LLC*, Civ. Act. No. 2:11-cv-00946, 2012 WL 399178, *6 (S.D. W. Va. Feb. 7, 2012) (citations omitted).   Thus, testing the sufficiency of a complaint by a motion to dismiss generally will not reach the merits of an affirmative defense based upon the statute of limitations unless

"'facts sufficient to rule on an affirmative defense are alleged in the complaint[.]'" *Id*. (quoting *Goodman v.Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007)).

In this case, Defendant asserts the facts alleged in the Complaint are sufficient to find the statute of limitations expired because Plaintiffs state that Erie tendered the entire payoff amount on January 31, 2011, and Defendant said it received the check on March 3, 2011. Plaintiffs also claim they sent an additional payment on May 11, 2011 of $538.42, and they were informed by Mr. Moore on June 1, 2011, that the mortgage was paid in full.   Thus, Defendant argues that, even if the Court assumes the last payment was due under the agreement on May 11, 2011, Plaintiffs did not file this action until January 29, 2013, which was well beyond the one-year statute of limitations found in West Virginia Code § 46A-5-101(1).

The Court agrees with Defendant.   In *Delebreau v. Bayview Loan Servicing, LLC*, 680 F.3d 412 (4th Cir. 2012), the Fourth Circuit considered a similar issue when it was asked to resolve whether the "the due date of the last scheduled payment of the agreement," as provided in § 46A-5-101(1), begins to run from the loan maturity date or from the loan acceleration date set by the servicer when the plaintiffs defaulted on their mortgage. 680 F.3d at 413.   Under the deed of trust, acceleration of the loan resulted in the total amount being due and payable at once, and no additional payments thereafter were scheduled. *Id*. at 415-16.   Thus, the Fourth Circuit held that, although the maturity date of the loan was not until June 1, 2030, it no longer was effective because the loan was accelerated with the total amount due effective June 5, 2007.   Therefore, the Fourth Circuit found the acceleration of the loan under the terms of the agreement triggered the running of the statute of limitations, preventing a nearly 23 year gap between the date all sums became due

and payable under the acceleration provision and the loan maturity date. *Id*. at 416.   In so finding, the Fourth Circuit recognized that this application of the statute of limitations promotes the legislative goals of initiating claims promptly and avoiding inconvenience and fraud that may arise from stale claims. *Id*. at 416 (citations omitted).

In this case, Plaintiffs argue that the Court should not follow *Delebreau* because it relied upon the terms of the specific acceleration provision in the deed of trust applicable to that case.   Plaintiffs assert they have not had time to analyze the deed of trust in this case so, therefore, dismissal would be premature.   In support of their position, Plaintiffs cite footnote 3 of *Delebreau* in which the Fourth Circuit stated:   "In view of the plain language of the deed of trust and the statute of limitations, and the facts of this case, we conclude that the cases cited by the Delebreaus in which the borrower prepaid the loan before the maturity date, or the loan was canceled by agreement of the parties, are inapposite." *Id*. at 416.[1]   As this is a case in which the loan was paid before its maturity date, Plaintiffs argue *Delebreau* should not apply.   The Court disagrees.

Although the Fourth Circuit did rely upon the plain language of the deed of trust in *Delebreau*, the Court finds that an in depth analysis of the deed of trust in this case is unnecessary based upon the allegations in the Complaint itself.   It is evident from the Complaint that the loan was paid in full-*at the latest*-on May 11, 2011, and no further payments thereafter were due.

---

[1]In footnote 3, the Fourth Circuit cited *Amason v. First State Bank of Lineville*, 369 So.2d 547, 550 (Ala. 1979) (holding that Alabama's statute of limitations based upon the due date of the last scheduled payment "began to run from the date of the last scheduled payment of the agreement immediately prior to the time in which the agreement ceased to legally exist" because it was cancelled by the parties), and *Wening v. Jim Walter Homes, Inc.*, 464 F. Supp. 110, 113 (S.D. Ind. 1978) (stating under Indiana law "it would not be logical to use the date of the last scheduled payment as the point at which the year begins when the note is paid in full before the last scheduled payment").

Thus, it is axiomatic that any payment schedule the parties agreed upon in the deed of trust was nullified by the fact the debt no longer existed.   Indeed, Plaintiffs state in their Complaint that they received correspondence from Defendant and ReconTrust Company notifying them that the mortgage was paid in full and a Release of Mortgage was sent to the County Recorder's office.   Moreover, if the Court were to adopt the position that the statute of limitations does not run until after the date of final installment payment under the original payment plan (in this case September 2024), it would be completely contrary to the legislative purpose of preventing stale claims.   Under that analysis, Plaintiffs could file their action more than thirteen years after they were released from their mortgage and, presumably, had no further contact with Defendant.   Such a result is nonsensical.

Recently, the West Virginia Supreme Court also cited *Delebreau* in reaching the same result.   In *Tribeca Lending Corp. v. McCormick*, No. 12-0150, 2013 WL 3155990 (W. Va. June 18, 2013), the West Virginia Supreme Court was asked to determine when the statute of limitations began to run when a homeowner defaulted on his mortgage and the loan was accelerated, with all sums being immediately due and payable.   In deciding the issue, the West Virginia Supreme Court held that the one-year statute of limitations found in § 46A-5-101(1)

> begins to run on the date under the parties' agreement providing for the final periodic payments of the debt. However, if the periodic payments are accelerated under the terms of the agreement, causing all the payments to become immediately due and payable by the consumer, then the statute of limitations begins to run on the date when the accelerated payment is due.

Syl. Pt. 6, *Tribeca*.

As stated earlier, the Complaint in this case clearly indicates there were no payments due after May 11, 2011, at the latest.   However, even if this Court looks at the language in the deed of trust, it reaches the same result.   Defendant attached a copy of the deed of trust to its Reply.   In part, the deed of trust provides that the "debt is evidenced by Borrower's note . . ., which provides for monthly payments, with the full debt, *if not paid earlier*, due and payable on SEPTEMBER 1, 2024." *Deed of Trust*, at 1 (emphasis added).   In this case, the parties agree that the entire debt was paid early.   Therefore, even under the language of the deed of trust, the final periodic payment date of September 1, 2024, no longer has any significance because the borrowers were completely released from their mortgage years earlier.[2]

Plaintiffs further argue, however, that the Court should consider the four-year statute of limitations contained in § 46A-5-101 as applying to this case.   This part of the provision provides: "With respect to violations arising from consumer credit sales or consumer loans made pursuant to revolving charge accounts or revolving loan accounts, or from sales as defined in article six of this chapter, no action pursuant to this subsection may be brought more than four years after the violations occurred." W. Va. Code § 46A-5-101(1).   Clearly, Plaintiffs' mortgage was not a revolving charge account or revolving loan.   In addition, Plaintiffs fail to cite any case which has ever treated a home mortgage as a sale as that term is defined in article six.   Article six defines a sale as: "any sale, offer for sale or attempt to sell any goods for cash or credit or any services or offer for services for cash or credit." W. Va. Code § 46A-6-102(5).   Chapter 46A defines "goods" as "goods not in existence at the time the transaction is entered into and gift and

---

[2]As the deed of trust is central to Plaintiffs' claims, the Court's reference to that document does not convert Defendant's motion to dismiss into a motion for summary judgment. *See Van Matre v. Boilermaker-Blacksmith Nat. Pension Trust*, 3:10-1291, 2011 WL 3684816, at 3 n.1 (S.D. W. Va. Aug. 23, 2011).

merchandise certificates, but excludes money, chattel paper, documents of title and instruments." W. Va. Code § 46A-1-102(21).   Chapter 46A also defines "services" as "(a) Work, labor and other personal services; (b) privileges with respect to transportation, use of vehicles, hotel and restaurant accommodations, education, entertainment, recreation, physical culture, hospital accommodations, funerals, cemetery accommodations, and the like; and (c) insurance" W. Va. Code § 46A-1-102(47).   As Plaintiffs' mortgage does not fall within these definitions, the Court declines to find that the four-year statute of limitations contained within § 46A-5-101 applies.[3]

Therefore, for the foregoing reasons, the Court finds the statute of limitations found in § 46A-5-101 expired, at the latest, one year after May 11, 2011.   As Plaintiffs did not file this action until January 29, 2013, their claim under the WVCCPA is barred.   Accordingly, the Court **GRANTS** Defendant's Motion to Dismiss Plaintiffs' WVCCPA claim.

## B.
### Breach of Contract

Defendant next argues that Plaintiffs fail to properly allege a claim for breach of contract.   To avoid dismissal of a breach of contract claim under Rule 12(b)(6), West Virginia law requires: "the existence of a valid, enforceable contract; that the plaintiff has performed under the contract; that the defendant has breached or violated its duties or obligations under the contract; and that the plaintiff has been injured as a result." *Executive Risk Indem., Inc. v. Charleston Area Med. Ctr., Inc.*, 681 F. Supp.2d 694, 714 (S.D. W. Va. 2009) (citations omitted).   For a claim of

---

[3]The only case Plaintiffs cite in support of applying the four-year statute of limitations is *Dunlap v. Friedman's Inc.*, 582 S.E.2d 841 (W. Va. 2003).   However, *Dunlap* held that "a consumer who is a party to a closed-ended credit transaction, resulting from *a sale* as defined in West Virginia Code § 46A-6-102(d), may bring any necessary action within either the four-year period commencing with the date of the transaction or within one year of the due date of the last payment, whichever is later." Syl. Pt. 6, in part, *Dunlap*, (emphasis added).   As Plaintiffs' mortgage does not fall within the definition of a sale, *Dunlap* does not control.

breach of contract to be sufficient, "a plaintiff must allege in his complaint 'the breach on which the plaintiffs found their action . . . [and] the facts and circumstances which entitle them to damages.'" *Id.*   In this case, Defendant argues Plaintiffs have failed to sufficiently allege a breach of contract because they have failed to assert that Defendant violated any particular provision in the contract.   Instead, Plaintiffs broadly state Defendant's actions violated the parties' contract.

In regard to their breach of contract claim, Plaintiffs state they entered into a mortgage agreement with Defendant, and they complied with the agreement.   Plaintiffs claim that Defendant breached "the agreement by failing to account for and to apply the check for the total amount of the payoff until May of 2011" and "by taking affirmative steps to foreclose on the Plaintiffs' homestead." *Compl.* at ¶¶44 & 45.   In addition, as part of their breach of contract claim, Plaintiffs assert Defendant violated West Virginia Code § 38-12-1(a).   This section provides:

> Every person entitled to the benefit of any lien on any estate, real or personal, or to the money secured thereby, . . . shall be required to furnish and execute an apt and proper written release thereof free of charge to the debtor whose obligation secured by such lien has been fully paid and satisfied, if the lien is of record in the proper county. Such release shall be executed and furnished to the debtor within thirty days after the debt has been satisfied.

W. Va. Code § 38-12-1(a), in part.   Plaintiffs contend Defendant violated this statutory provision by not executing the release and furnishing the release to them within thirty days. *Compl.* at ¶¶46-47.   As a result of all these actions, Plaintiffs claim they suffered direct and consequential damages.

Nonetheless, as noted by Defendant, Plaintiffs point to no provisions in the agreements which actually were violated by Defendant's actions.   In addition, it is unclear to the

Court how the alleged failure to comply with West Virginia Code § 38-12-1(a) constitutes a breach of contract, and Plaintiffs fail to adequately describe in the Complaint any connection between the statute and the agreements.   In fact, Plaintiffs did not even respond to Defendant's argument that they failed to state a claim with respect to the alleged statutory violation.   Clearly, a mere broad assertion that the contract was violated is a conclusory statement, which is insufficient under *Iqbal* and *Twombly*, and the Court finds Plaintiffs' breach of contract claim is inadequate.

In their Response, however, Plaintiffs indicate their copies of the note and deed of trust were burned when their house was destroyed.   Although Plaintiffs do not say so directly, the implication is that they did not have copies of the note or deed of trust when they filed the Complaint so they could not identify any provision in the contract which was violated.   Assuming that Plaintiffs did not have a copy of the note and deed of trust until after the Complaint was filed, the Court finds justice requires that Plaintiffs be given the opportunity to amend their Complaint with respect to their breach of contract claim. *See* Fed. R. Civ. P. 15(a)(2) (providing, in part, "a party may amend its pleading . . . with . . . the court's leave.   The court should freely give leave when justice so requires.").   Therefore, the Court finds it appropriate under the circumstances to **DENY WITHOUT PREJUDICE** Defendant's motion to dismiss the breach of contract claim and **DIRECTS** Plaintiffs to amend their breach of contract claim **within fourteen (14) days** of entry of this Memorandum Opinion and Order.

### C.
### Libel and Defamation

Defendant also argues that Plaintiffs' claim for libel and defamation must be dismissed because the claim is preempted under the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.*   Section 1681h(e) of the FCRA provides:

(e) Limitation of liability

Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report *except as to false information furnished with malice or willful intent to injure such consumer.*

W. Va. Code § 15 U.S.C. § 1681h(e) (emphasis added).   Defendant asserts the clam is preempted because Plaintiffs fail to allege "malice or willful intent to injure" in the Complaint.   On the other hand, Plaintiffs insist their allegations are sufficient because they need only plead malice and willful intent generally under Rule 9(b) of the Federal Rules of Civil Procedure.[4]

The problem with both parties' arguments, however, is that they focus solely on the malice and willful intent requirement of § 1681h(e) and completely ignore the rest of the statute. In *Ross v. Federal Deposit Insurance Corp.*, 625 F.3d 808 (4th Cir. 2010), the Fourth Circuit considered whether a plaintiff's claim under North Carolina's Unfair and Deceptive Trade Practices Act (NCUDTPA) for false reporting of credit information against Washington Mutual Bank (WaMu) was preempted under §1681h(e).[5]   "Section 1681h regulates the disclosures that

---

[4]Rule 9(b) states, in part, that "[m]alice, intent, knowledge and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b), in part.

[5]Before addressing the issue under § 1681h(e), the Fourth Circuit found her statutory claim under the NCUDTPA was "squarely preempted by the plain language of" 15 U.S.C. § 1681t(b)(1)(F).   *Id.* at 813.   The Fourth Circuit addressed § 1681h(e) because the plaintiff argued that, despite the language in § 1681t(b)(1)(F), her claim was authorized under § 1681h(e).

-13-

CRAs [consumer reporting agencies] must provide to consumers under § 1681g.  Section 1681g requires CRAs to disclose to consumers the information in their credit file upon request.  Sections 1681h(a) through 1681h(d) contain the procedures CRAs must follow when providing disclosures." 625 F.3d at 813.  Given this statutory scheme, the Fourth Circuit held that whether a claim falls within the § 1681h(e)'s narrow exception for malice or willful intent, requires a two-step analysis.  First, a court must "ask whether the claim falls within the scope of § 1681h(e), which includes only claims 'based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report.'" *Id*. at 814 (quoting 15 U.S.C. §1681h(e), in part).  Second, if a claim satisfies the criteria in step one, then the court asks "whether the 'malice or willful intent to injure' exception to the general bar against law actions applies." *Id*. (citation and footnote omitted).

In considering the first step, the Fourth Circuit noted that WaMu is not a CRA.  Thus, § 1681g and 1681h do not apply. *Id.*  In addition, the Fourth Circuit stated that WaMu is not a user of consumer reports under § 1681m.  Likewise, the Fourth Circuit found it did not appear the claim fell within the final category for those "'based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part of the report[.]'" *Id*. (quoting § 1681h(e), in part).  Therefore, the Fourth Circuit stated it was not clear that the NCUDTPA claim against WaMu even fell within the scope of § 1681h(e).  Even if the Fourth Circuit assumed it did, it then found the plaintiff failed the criteria in step two. *Id*. at 816.

-14-

Applying *Ross* to the present case, the Court finds Defendant has set forth no evidence or argument that it falls within any of the categories in step one.   Without a showing that § 1681h(e) applies to Defendant, the heightened standard of malice and willful intent becomes inapplicable.   Therefore, the Court **DENIES** Defendant's motion to dismiss Plaintiffs' defamation and libel action under § 1681h(e). *See Evans v. Trans Union LLC*, Civ. Act. No. 2:10-cv-00945, 2011 WL 672061 (S.D. W. Va. Feb. 14, 2011) (finding a plaintiff's common law negligence claim against a hospital with regard to the recording and reporting of medical bill payments was not preempted by § 1681h(e) because the hospital's actions did not fall within the ambit of categories covered in step one of analysis).

## D.
## Invasion of Privacy

Defendant next asserts that Plaintiffs' invasion of privacy claim must be dismissed because they fail to allege extreme conduct.   Under West Virginia law, "[a]n 'invasion of privacy' includes (1) an unreasonable intrusion upon the seclusion of another; (2) an appropriation of another's name or likeness; (3) unreasonable publicity given to another's private life; and (4) publicity that unreasonably places another in a false light before the public." Syl. Pt. 8, *Crump v. Beckley Newspapers, Inc.*, 320 S.E.2d 70 (W. Va. 1984).   In *Harbolt v. Steel of West Virginia, Inc.*, 640 F. Supp.2d 803 (S.D. W. Va. 2009), this Court explained that an "[u]nreasonable intrusion upon another's seclusion occurs when '[o]ne . . . intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns  . . . if the intrusion would be highly offensive to a reasonable person." 640 S.E.2d at 817 (quoting Restatement (Second) of Torts § 652B).

-15-

In their Complaint, Plaintiffs base their invasion of privacy claim on two grounds. First, Plaintiffs assert that Defendant harassed them with unwanted calls to both their home and work falsely accusing them of failing to pay their mortgage.   Plaintiffs claim these calls occurred daily between February and May of 2011.   Similarly, Plaintiffs claim in their statement of facts that they received letters from Defendant nearly every day inaccurately stating their account was delinquent.   Second, Plaintiffs claim that Defendant falsely informed four separate credit reporting agencies that their mortgage payments were delinquent.   Those reports were accessed by other potential creditors and lenders, which negatively impacted their ability to buy a new house.   Assuming the truth of these allegations, the Court disagrees with Defendant and finds Plaintiffs have stated a plausible claim for invasion of privacy under West Virginia law. *See Elkins v. Diversified Collection Serv., Inc.*, Civ. Act. No. 5:13-cv-00927, 2013 WL 3754830, *7 (S.D. W. Va. July 15, 2013) (finding the plaintiff stated a plausible claim for invasion of privacy based upon collection service's telephone calls about a debt that plaintiff claimed was satisfied and from falsely reporting information to the Internal Revenue Service); *see also Gray v. Chase Bank USA, N.A.*, No. 5:10-cv-00979, 2011 WL 4716232, *5 (S.D. W. Va. 2011) (denying motion for summary judgment on invasion of privacy claim where the plaintiff alleged the defendant bank made nearly 600 telephone calls in less than four months).   Therefore, the Court **DENIES** Defendant's motion to dismiss Plaintiffs' invasion of privacy claim.

### E.
### Tort of Outrage

Defendant further contends that Plaintiffs' claim for outrage must be dismissed. In order to prevail on a claim for outrage, also referred to as intentional infliction of emotional distress, a plaintiff must show:

-16-

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Syl. Pt. 3, *Travis v. Alcon Labs., Inc.*, 504 S.E.2d 419 (W. Va. 1998).   In evaluating a claim, a court's role is to determine whether the alleged "conduct may reasonably be regarded as so extreme and outrageous as to constitute the intentional or reckless infliction of emotional distress. Whether conduct may reasonably be considered outrageous is a legal question, and whether conduct is in fact outrageous is a question for jury determination." *Id.* at Syl. Pt. 4.

        In this case, Plaintiffs claim that, after losing their house to fire, Defendant began a campaign of phone calls and daily written communiqués falsely accusing them of defaulting on their mortgage, despite the fact their insurer had tendered a check for the payoff amount. Plaintiffs assert Defendant "sat" on the check and repeatedly harassed Plaintiffs and falsely reported delinquencies to four separate credit reporting agencies.   Plaintiffs state Defendant's action significantly impacted their ability to purchase a comparable house, and they were forced to purchase a much smaller house in need of constant repairs and worth half the value of their previous house.   In addition, Plaintiffs assert Defendant refused to release the lien on the property destroyed by fire for months, and Defendant demanded an additional check of $538.42 in interest which Plaintiffs paid.   In the meantime, Defendant earned $150.00 in interest on the insurance payoff which was placed in Defendant's interest bearing account.   Assuming the truth of these allegations, the Court finds Plaintiffs have sufficiently alleged a plausible claim of outrage and, therefore, the Court **DENIES** Defendant's motion to dismiss this claim.

**F.**
**Agency and Respondeat Superior**

In the Complaint, Plaintiffs state separate causes of action for agency (Count VIII) and respondeat superior (Count IX).   These counts contain just two sentences, which generally assert Defendant is liable for the actions of its employees.   Defendant argues the counts must be dismissed because they merely are theories of liability, not independent claims.   Plaintiff asserts the claims are proper because Defendant may be held liable for the actions of its employees by virtue of an agency or a respondeat superior relationship.

Although the Court agrees with Plaintiffs that they can argue Defendant may be held liable for the actions of its employees under an agency or respondeat superior theory, the Court finds Plaintiffs have failed to sufficiently state an independent cause of action under either of these theories.   Both of these counts contain only cursory and conclusory statements, without any direct claims against individual employees for which they are attempting to hold Defendant liable. In fact, BAC is the only defendant named in the Complaint.   Therefore, to the extent Plaintiffs are attempting to make independent claims, the Court **GRANTS** Defendant's motion to dismiss these claims.   Plaintiffs are not prohibited, however, from arguing that Defendant is liable for the actions of its employees or agents by virtue of agency or respondeat superior relationship.[6]

---

[6]As the Court finds the claims insufficient under *Iqbal* and *Twombly*, the Court declines to address Defendant's argument that these claims cannot even exist as independent causes of action under West Virginia law.

## G.
## Fraudulent Misrepresentation

Plaintiffs' next claim is for fraudulent misrepresentation. Plaintiffs assert that, despite the fact Defendant received a check for the total payoff amount from their insurer, they received correspondence dated May 11, 2011, from Keith Tuttle, who worked for Defendant, fraudulently misrepresenting to them they owed an additional $538.42 in interest. Defendant argues this claim must be dismissed because it is not stated with particularity under Rule 9(b). *Fed. R. Civ. P.* 9(b) (providing, in part, "a party must state with particularity the circumstances constituting fraud"). The Court disagrees. In *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776 (4th Cir. 1999), the Fourth Circuit explained the "'circumstances' required to be pled with particularity under Rule 9(b) are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" 176 F.3d at 784 (citations omitted). In other words, Plaintiffs must describe the "'who, what, when, where, and how' of the alleged fraud." *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (quoting *U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 384 (5th Cir. 2003) (other citation and some quotation marks omitted)). Plaintiffs' allegations clearly meet this standard. Therefore, the Court **DENIES** Defendant's motion to dismiss this claim.

## H.
## Negligence

Finally, Defendant insists Plaintiffs' claim for negligence must be dismissed because Plaintiffs have failed to allege a special relationship outside the bounds of a servicer borrower relationship. This Court recently addressed this precise issue in *Ranson v. Bank of Am., N.A.*, Civ. Act. No. 3:12-5616, 2013 WL 1077093 (S.D. W. Va. Mar. 14, 2013) and in *Petty v.*

-19-

*Countrywide Home Loans, Inc.*, Civ. Act. No. 3:12-6677, 2013 WL 1837932 (S.D. W. Va. May 1, 2013.  In *Ranson*, the Court explained that, "under West Virginia law, a plaintiff 'cannot maintain an action in tort for an alleged breach of a contractual duty.'" *Ranson,* 2013 WL 1077093, at *5 (quoting *Lockhart v. Airco Heating & Cooling*, 567 S.E.2d 619, 624 (W. Va. 2002) (footnote omitted)).  Instead, in order for tort liability to arise in a contractual situation there must be a "'breach of some positive legal duty imposed by law *because of the relationship of the parties*, rather than a mere omission to perform a contract obligation.'" *Id.* (emphasis added in *Ranson*). "In deciding whether a 'special relationship' exists beyond the contractual obligations of the parties largely depends upon the extent to which the particular plaintiff is affected differently from society in general." *Petty*, 2013 WL 1837932, at *11 (some internal quotation marks and citations omitted).  When the case involves lenders and borrowers, a "special relationship" may be created where the lender "'perform[s] services not normally provided by lender to a borrower.'" *Ranson,* 2013 WL 1077093, at *5 (citations omitted).

In this case, Plaintiffs assert they sustained injuries because Defendant negligently handled the insurance check by not timely applying it to their mortgage.  Crediting payments to an account is a normal service provided by a lender to a borrower.  There is nothing about this allegation that creates a special relationship.   Therefore, the Court **GRANTS** Defendant's motion to dismiss Plaintiffs' negligence claim.

## VI.
## CONCLUSION

Accordingly, for the foregoing reasons, the Court **GRANTS** Defendant's motion to dismiss Plaintiffs' WVCCPA, agency, respondeat superior, and negligence claims; **DENIES** the motion with respect to the libel and defamation, invasion of privacy, outrage and fraudulent

misrepresentation claims; and **DENIES WITHOUT PREJUDICE** the motion to dismiss Plaintiffs' breach of contract claim.   The Court **DIRECTS** Plaintiffs to amend their Complaint with respect to their breach of contract claim **within fourteen (14) days** of entry of this Memorandum Opinion and Order.


      The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:      September 18, 2013

ROBERT C. CHAMBERS, CHIEF JUDGE